1
2
3
4
5                    **IN THE UNITED STATES DISTRICT COURT**
6                        **FOR THE DISTRICT OF ARIZONA**
7
8    United States of America,              )
                                            )        No. CR-10-02022-TUC-RCC (BGM)
         Plaintiff,                         )
9                                           )        **REPORT AND RECOMMENDATION**
         v.                                 )
10                                          )
     Clarence Edward Shirley,               )
11                                          )
         Defendant.                         )
12   _____)

13          Pending before the Court is a Petition to Revoke Supervised Release (Doc. 47) filed

14   on June 11, 2014.  An Evidentiary Hearing occurred before Magistrate Judge Macdonald on

15   August 22, 2014. *See* Minute Entry 8/22/14 (Doc. 53).  Defendant was present and assisted

16   by counsel. The Government presented two witnesses and admitted two exhibits into

17   evidence. (Exhibits 4 and 7 attached.)  The Defendant did not testify.  Pursuant to LRCrim.

18   5.1, this matter came before Magistrate Judge Macdonald for an evidentiary hearing and a

19   report and recommendation.  *See also*  18 U.S.C. § 3401(i).   The Magistrate Judge

20   recommends that the District Court, after its independent review, find that the Defendant did

21   not violate the terms of his supervised release.

22

23   **I.      PROCEDURAL BACKGROUND**

24          On August 13, 2010,  Defendant pled guilty to the felony offense of Transportation

25   of Illegal Aliens for Profit.  *See* Minute Entry August 13, 2010 (Doc. 16 ).  On April 22,

26   2011, the District Court sentenced Defendant to 20 months in prison, with credit for time

27   served, followed by 36 months of supervised release.  *See* Judgment & Commitment April

28   22, 2011 (Doc. 43).  The supervised release commenced on November 13, 2012.  On August

7, 2013, the District Court revoked the Defendant's supervised release and sentenced the Defendant to nine (9) months in prison, with credit for time served, followed by 34 months of supervised release, which commenced on February 3, 2014.   *See* Judgment & Commitment August 13, 2013 (Doc. 43).

On June 11, 2014, Defendant's Probation Officer, filed a Petition to Revoke Supervised Release (Doc. 47) alleging a violations of the following condition:

> Standard Condition No. 1: "You shall not commit another federal, state, or local crime during the term of supervision."
>
> "Shirley committed the act of alien smuggling as is evidenced in U.S. Border Patrol arrest reports. Specifically, on or about April 25, 2014, at or near San Pedro, in the District of Arizona, Clarence Shirley, knowing and in reckless disregard of the fact that an alien, C.M.H., had come to, entered and remained in the United States in violation of law, did transport and move said alien within the United States by means of transportation or otherwise in furtherance of such violation of law, all in violation of 8 U.S.C. §1324(a)(1)(A0(ii) and (a)(1)(B)(ii), which is punishable by up to five years imprisonment. Grade A violation. §7B1.1(a)(1)"

 Pet. to Revoke Supervised Release (Doc. 47) Allegation A.

At the hearing, the Defendant stipulated he knew of this condition of his supervised release, but denied violating Standard Condition No. 1.

United States Border Patrol Agents Arthur Laguna and William Dryden testified at the hearing. Two exhibits were admitted into evidence by the Government, the Judgment and Commitment Revocation of Supervised Release dated August 8, 2013 (Exhibit 7) and the Petition to Revoke Supervised Release dated June 11, 2014. (Exhibit 4).

## II.    FACTUAL BACKGROUND

The operative facts are not in dispute. On April 25, 2014, at approximately 6:25 p.m., Border Patrol Agents Laguna and Dryden were on duty, working the Disrupt Unit, in the area of State Route 86, east of San Pedro Road, near Three Points, Arizona. There is a Border Patrol Checkpoint on State Route 86 at Milepost 146F. This is an area known for drug and alien smuggling. Agents Laguna and Dryden were walking in the desert, which is very rugged mountain terrain. They spotted an individual dressed in black clothing, later identified as the

- 2 -

1  Defendant, walking in the area. They lost sight of the Defendant and called for air support

2  A helicopter arrived and observed two individuals under a tree approximately 50 yards from

3  the agents. The agents went to the area and the two individuals ran in opposite directions, with

4  one running west and the other running east.

5         Agent Laguna ran after the Defendant and apprehended him. Agent Laguna spoke to

6  the Defendant in English and gave him his Miranda rights, which the Defendant waived. The

7  Defendant told Agent Laguna the other subject, later identified as a juvenile, C.M.H., arrived

8  at the Defendant's house and the Defendant, along with some other individuals drove the

9  Defendant and C.M.H. to the Coyote Store at the intersection of State Route 86 and San Pedro

10 Road. After the Defendant and C.M.H. were dropped off at the store, they began walking in

11 the desert, each carrying a bottle of water until they were apprehended. The Defendant said

12 they were walking because he did not want to get the other individuals in the vehicle in

13 trouble. The Defendant said he was assisting the juvenile because he had been separated from

14 his group and to help the juvenile avoid the Border Patrol Checkpoint. The Defendant did not

15 ask the juvenile if he was in the United States illegally, but the Defendant presumed this to

16 be the case, "based on his past experience."

17        Agent Dryden ran after the juvenile and apprehended him. The juvenile was taken to

18 the Tucson Processing Center, where no prior record was found and fingerprints revealed no

19 prior criminal record. Agent Dryden spoke to the juvenile in Spanish, who waived his

20 Miranda rights. Agent Dryden then asked the juvenile three questions. Agent Dryden asked

21 the juvenile if he was a United States citizen and the juvenile responded no. Agent Dryden

22 then asked the juvenile where he was born, and he replied Mexico. Finally, Agent Dryden

23 asked the juvenile if he had papers to be in the United States, and he said no. Agent Dryden

24 never asked the juvenile if he was an alien and in the United States illegally. C.M.H. was not

25 prosecuted because of his juvenile status. The hearsay statements of the juvenile were

26 admitted by the Court over the objection of the Defendant's counsel.

27

28
                                          - 3 -

1      Neither Agent Laguna nor Agent Dryden had any information about what happened

2  to the juvenile after he was seen at the Tucson Processing Center. Both agents admitted they

3  had not taken any steps to locate the juvenile to testify at the hearing and did not know what,

4  if anything, was done by the government to locate the juvenile in an attempt to have him

5  testify at the hearing. No other evidence was presented by the government as to what steps

6  were taken to locate the juvenile to testify at the revocation hearing.

## III. ANALYSIS

    "In evaluating the sufficiency of the evidence supporting a supervised release revocation, 'we ask whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of a violation by a preponderance of the evidence.'" *United States v. Thum*, 749 F.3d 1143, – (9th Cir. 2014) (quoting *United States v. King*, 608 F.3d 1122, 1129 (9th Cir. 2010)) (internal quotation marks omitted) (citations omitted); *see also* 18 U.S.C. § 3583(e)(3). The Federal Rules of Evidence do not apply to a revocation hearing. Fed.R.Evid. 1101(d)(3); *United States v. Martin*, 984 F.2d 308, 310-11 (9th Cir.1993).

    The Sixth Amendment right to confront testimonial witnesses established in *Crawford v. Washington,* 541 U.S. 36 (2004), does not apply to the admission of hearsay evidence during revocation of supervised release proceedings. *United States v. Hall,* 419 F.3d 980, 985-86 (9th Cir. 2005) (citations omitted). Nevertheless, "[u]nder *Morrissey v. Brewer,* 408 U.S. 471 (1972), every releasee is guaranteed the right to confront and cross-examine adverse witnesses at a revocation hearing, unless the government shows good cause for not producing the witnesses." *United States v. Comito,* 177 F.3d 1166, 1170 (9th Cir. 1999) (citations omitted). To determine "whether the admission of hearsay evidence violates the releasee's right to confrontation in a particular case, the court must weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it." *Id.*; *see also Valdivia v. Schwarzenegger*, 599 F.3d 984, 988-89 (9th Cir. 2010)

- 4 -

("The law of this circuit is clear: the *Comito* test remains central to confrontation rights in parole hearings.").

"The weight to be given the right to confrontation depends on two primary factors: the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence." *Comito,* 177 F.3d at 1171. "In determining the government's good cause in not producing a witness, the court must look to 'both the difficulty and expense of procuring witnesses and the traditional indicia of reliability borne by the evidence.'" *Hall*, 419 F.3d at 988 (quoting *United States v. Martin*, 984 F.2d 308, 312 (9th Cir. 1993)).

The hearsay testimony consisted of the juvenile's alleged statements to Agent Dryden regarding the juvenile's immigration status. The juvenile's hearsay statements are of great import to the ultimate finding and the nature of the facts to be proven by the hearsay evidence. "Unsworn verbal allegations are, in general, the least reliable type of hearsay, and the particular utterances at issue here bore no particular indicia of reliability." *Comito*, 177 F.3d at 1171. While there is evidence to suggest the Defendant thought he was involved in criminal activity, without the hearsay statements of C.M.H. the government cannot prove necessary elements of the alleged violation, specifically, whether the juvenile was an alien and had come to, entered and remained in the United States is violation of law. The fact that the Defendant may have erroneously believed he was committing a crime does not establish the necessary elements of the claimed offense. As such, because the hearsay evidence is important to the Court's finding, and it involves the least reliable form of hearsay, Defendant has a strong interest in asserting his confrontation right. *See id.*

The Government offered no evidence regarding its efforts to determine C.M.H.'s whereabouts or to otherwise attempt to contact him or his parents in advance of the hearing. "Thus, no cause has been shown for denying [Defendant] his confrontation rights – ther is nothing at all to put on the Government's side of the scale." *Comito*, 177 F.3d at 1172. As such, the Government failed to meet its burden to demonstrate good cause.

The Court finds it erroneously admitted into evidence the juvenile's hearsay statements during the hearing.  Accordingly, the Government did not establish, by a preponderance of the evidence the Defendant violated  Standard Condition 1 of his supervised release.

**IV.    CONCLUSION**

The Government has not established by a preponderance of the evidence that Defendant Shirley has violated the terms of his supervised release.

**IV.    RECOMMENDATION**

Based on the foregoing and pursuant to 28 U.S.C. § 636 (b) and 18 U.S.C. § 3401(i), the Magistrate Judge **RECOMMENDS** that the District Court, after an independent review of the record, find that the Defendant did not violate Standard Condition

IT IS FURTHER RECOMMENDED the disposition hearing set fro at **9:10 a.m. on September 29, 2014**, be vacated pending review by the District Court..

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  No reply shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number: **CR 10-02022-TUC-RCC**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

DATED this 27th day of August, 2014.

_____
Bruce G. Macdonald
United States Magistrate Judge